# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| RONALD KELLY, | ) | CASE NO. 5:14-CV-1217 |
| | ) | |
| Petitioner, | ) | JUDGE ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ALAN LAZAROFF, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Ronald Kelly ("Petitioner" or "Kelly") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Kelly*, Case No. 2009-CR-689 Portage County, Ohio June 23, 2010 ). (Doc. No. 5-1 at Ex. 14.) For the reasons set forth below, it is recommended that the petition be dismissed with prejudice.

## I. Background

The state appellate court that affirmed Petitioner's conviction described the following relevant facts:

> On the early morning of November 15, 2009, appellant left a fraternity party at Kent State University at around 2:00 a.m. with his friends, Adrian Barker and Glenn Jefferson. The trio got into Jefferson's white Honda Civic. At approximately the same time, four Kent State students – Christopher Kernich, Bradley Chelko, Dave Clements, and Christopher Pataky – were on their way home after an evening of drinking and socializing. As Jefferson's car was beginning to exit the lot,

Kernich, Chelko, Clements, and Pataky were passing the parking lot on foot. Testimony indicated that Jefferson's Honda left the lot quickly and nearly hit one of the walkers as it exited. The near-miss prompted a member of the group to shout some "unfriendly" words at the car as it pulled out onto the street. As a result of the group's exclamation, Jefferson pulled the car over and parked in a lot further up the street.

In the meantime, Kernich, Chelko, Clements, and Pataky continued walking in the direction of the parked vehicle. As the group passed Jefferson's parked car, appellant and Barker exited the vehicle. Appellant shoved Chelko into the Honda's rear bumper then punched him in the face, knocking him to the ground.

The state presented multiple witnesses who testified that, after appellant knocked Chelko down, he then "squared off" with Kernich. As appellant and Kernich "danced" in the street, each in a fighting posture, there was testimony that Barker, running at a full sprint, blindsided Kernich with a punch to the head. It appeared Kernich collapsed to the ground unconscious, cracking his head on the pavement. Witnesses testified that appellant and Barker then commenced kicking and stomping the defenseless Kernich in the head. Kernich passed away as a result of injuries he sustained from the attack.

Conversely, appellant testified that he and Chelko were brawling in the street, with Chelko making continued efforts to tackle him. Once the fight with Chelko ended, appellant testified he turned around only to find Kernich on the ground, the apparent victim of Barker's fury. Appellant asked Barker why he stomped Kernich, to which Barker did not respond. Appellant testified he never stomped or kicked Kernich.

After the dire consequences of the attacks became clear, Jefferson went to retrieve his vehicle and ripped off its temporary tags to avoid identification. Jefferson picked up appellant and the duo drove to where Barker was situated, surrounded by concerned civilians attempting to detain him. Appellant exited the vehicle in an effort to reason with the angry crowd and collect his friend. Very quickly thereafter, the police arrived and bystanders pointed out appellant and Barker, who were detained and eventually arrested. Kernich was quickly transported to the trauma center at Akron City

> Hospital where, several days later, he was pronounced dead.

*State v. Kelly*, No. 2010-P-49, 2012-Ohio-523 (Ohio App. Ct. Feb. 13, 2012).

## II. Relevant State Procedural History

### A. Trial Court Proceedings

In November 2009 and February 2010, the State issued an indictment and two supplemental indictments charging Petitioner with, *inter alias*: felonious assault of Kernich (Count One); murder - purposely causing the death of Kernich (Count Two); felony murder - causing Kernich's death while committing felonious assault (Count Three); assault of Chelko (Count Five); and assault of Clements (Count Six).[1] (Doc. Nos. 5-1 at Exs. 1-3.)

At a trial conducted in May 2010, Petitioner was represented by attorney Gregory Robey of Robey & Robey. (Trial Transcript ("Tr.") Vol. I at 3.) Petitioner testified in his own defense, and insisted that, although he had "squared up" in a fighting stance with Kernich, he had not kicked and punched Kernich once Kernich was on the ground. (Tr. Vol. VIII at 174-88.) Petitioner also presented ten witnesses who testified regarding Petitioner's good character, *e.g.*, that he attended church, and was polite, generous, helpful, respectful and not capable of violence. (Tr. Vol. VII at 182-205, Vol. VIII at 13-117.)

After the close of evidence, the trial court instructed the jury on the offenses of felonious assault, murder (purposely causing death), felony murder predicated on

---

[1] The fourth count of the indictment charged Petitioner with assaulting Stephen Manyo earlier in the evening on the night of the incident. (Doc. No. 5-1 at Ex. 3.) That count was severed and ultimately dismissed. (Doc. No. 14.)

3

felonious assault, and assault. (Tr. Vol. IX at 184-192, Doc. No. 6-9.) After deliberating, the jury convicted Petitioner of: felonious assault (Count One); felony murder (Count Three); and the assault of Chelko (Count Five). The jury acquitted Petitioner of murder (Count Two) and the assault of Clements (Count Six). (Doc. No. 5-1 at Ex. 9.) In June 2010, the trial court imposed concurrent sentences of imprisonment totaling 15 years to life. (Doc. No. 5-1 at Ex. 14.)

**B.    Direct Appeal**

Thereafter, Petitioner filed a notice of appeal. (Doc. No. 5-1 at Ex. 15.) In his direct appeal, Petitioner was represented by attorney Margaret Amer Robey, also of Robey & Robey. (*Id*. at Ex. 16.) On direct appeal, Petitioner argued, *inter alias*, that he had received ineffective assistance of trial counsel when his trial counsel failed to: (1) clarify that DNA mixture found on Petitioner's jeans and admitted into evidence at trial did not necessarily contain the blood of Kernich; (2) obtain the testimony of a forensic pathologist to testify regarding whether a kick could have caused Kernich's death, or whether Barker's running punch and Kernich's unguarded fall alone could have caused the fatal injury; and (3) object to pervasive misconduct by the prosecutor. (*Id*.)

In February 2012, the state appellate court affirmed Petitioner's conviction. *Kelly*, 2012-Ohio 523 at ¶ 117. The state appellate court declined to adjudicate Petitioner's claim of ineffective assistance of trial counsel. *Id*. at ¶¶ 71-72. The court pointed to Ohio law holding that an attorney on direct appeal who argues his own ineffective assistance at trial has an "inherent conflict of interest" because that attorney

4

is "presumed to be incapable of effectively arguing that he was ineffective at trial." *Id*. at ¶ 71. The court acknowledged that "[a] conflict of interest exists even if the trial and appellate attorneys are different, though from the same private law firm." *Id*. at ¶ 72. The court noted that, in Petitioner's case, trial counsel and appellate counsel were from the same private firm, and, thus, had an inherent conflict of interest. *Id*. Finally, the court concluded that Petitioner's claim of ineffective assistance of trial counsel could not "be adjudicated on direct appeal but, instead, should have been raised in a postconviction relief proceeding" pursuant to Ohio Revised Code 2953.21." *Id*.

Petitioner, through new counsel, filed a notice of appeal and a memorandum of jurisdiction in the Ohio Supreme Court. (Doc. No. 5-1 at Exs. 22, 23.) He did not, however, assert any propositions of law that are relevant to this petition. In September 2012, the Ohio Supreme Court declined jurisdiction and dismissed Petitioner's appeal. *State v. Kelly*, 974 N.E.2d 113 (Table), 132 Ohio St.3d 1516 (Ohio 2012).

**C.     Application to Reopen Direct Appeal**

In May 2012, Petitioner, through new counsel, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. (Doc. No. 5-1 at Ex. 29.) In his application, Petitioner argued that he received ineffective assistance of appellate counsel when, despite the fact that her representation would preclude review of his ineffective assistance of trial counsel claims, his appellate counsel continued to represent him on direct appeal. (*Id*. at 3.) According to Petitioner, appellate counsel's continued representation caused him to forfeit his ability to raise a claim of ineffective assistance of trial counsel based on, *inter alias*, trial counsel's failure

5

to request jury instructions on the lesser included offenses of aggravated assault, reckless homicide and involuntary manslaughter. (*Id*.)

In January 2013, the state appellate court denied Petitioner's Rule 26(B) Application. (Doc. No. 5-1 at Ex. 31.) The appellate court determined that the decision to forego lesser included offense instructions was "within the purview of trial strategy." (*Id*. at 3.) The court noted that trial counsel's defense strategy, "that another man – Adrian Baker – stomped the victim to death while [Petitioner] stood by innocently, was apparent" from the record, and that Petitioner's "'all-or-nothing' defense did not mandate an instruction of lesser-included offenses, especially given the nature of the evidence." (*Id*.) The state appellate court applied the test for ineffective assistance of counsel set forth in *Strickland .v. Washington*, 466 U.S. 668 (1984), and determined that, because the outcome of Petitioner's appeal would not have been different had appellate counsel raised this argument on appeal, he had not demonstrated ineffective assistance of appellate counsel, and Petitioner's appeal did not merit reopening. (*Id*. at 4-5.)

Petitioner, through counsel, filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme Court, in which he asserted the following propositions of law:

> I. A defendant's trial counsel renders ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, when trial counsel's unreasonable trial strategy prejudices the outcome of the defendant's trial. While trial counsel's reasonable trial strategy is to be given deference in the ineffective-assistance context, trial counsel's unreasonable trial strategy is to be given no

6

>> deference by reviewing courts.
>
> II. A defendant is deprived of the effective assistance of appellate counsel when the appellate counsel has an inherent conflict of interest and is unable to raise on the defendant's behalf meritorious claims of ineffective assistance of trial counsel because appellate counsel and trial counsel are partners in the same law firm.

(Doc. No. 5-1 at Ex. 33.) In June 2013, the Ohio Supreme Court declined jurisdiction. *State v. Kelly*, 988 N.E.2d 579 (Table), 135 Ohio St.3d 1459 (Ohio 2013).

### III. Proceedings in This Court

In June 2014, Petitioner, through new counsel, filed his § 2254 petition, which asserted four grounds for relief. (Doc. No. 1.) In July 2014, the State filed its Return of Writ in this case, in which it argued that Petitioner had procedurally defaulted his first, second and fourth grounds for relief. (Doc. No. 5.) In his September 2014 Traverse, Petitioner withdrew his first and fourth grounds for relief. (Doc. No. 8 at 8.) Accordingly, Petitioner requests review of his second and third grounds for relief, which are as follows:

> II. Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel by counsel's pursuit of an unreasonable trial strategy in failing to request a jury instruction on lesser included offenses.
>
> Supporting Facts: Petitioner was tried and convicted of felony murder, an unclassified felony under Ohio law, requiring a sentence of life imprisonment with a possibility of parole after fifteen years. Petitioner's trial counsel failed to request a jury instruction on the lesser offense of aggravated assault, a fourth degree felony with a possible sentence of imprisonment of six to eighteen months, in monthly increments. In light of the evidence, the failure to request an instruction on that lesser offense was an unreasonable trial

7

>   strategy. Petitioner's co-defendant, Adrian Barker, was tried separately and also convicted of felony murder. His counsel did request an instruction on aggravated assault and his conviction was reversed because of the refusal of the trial court to give that instruction.
>
> III. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel.
>
>   Supporting Facts: Petitioner was represented on direct appeal by the wife and business partner of his trial counsel. As a result, the court of appeals determined that appellate counsel had a conflict, and [appellate counsel] could not argue the issue of effective assistance of trial counsel.

(Doc. No. 1. at 5.)

## IV. Procedural Issues

**A.   Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Portage County, Ohio sentenced Petitioner. (Doc. No. 5-1 at Ex. 14.) Portage County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over the petition.

**B.   Exhaustion and Procedural Default - Ground Two - Ineffective Assistance of Trial Counsel**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. See 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349

(1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. See *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Further, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Similarly, where there are no

longer any state court remedies still available to a petitioner with respect to unexhausted claims, and this Court may deem those claims procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351]."). The State contends that Petitioner's second ground for relief is procedurally defaulted.

In his second ground for relief, Petitioner contends that he received ineffective assistance of trial counsel when his trial counsel failed to request a jury instruction on aggravated assault, a lesser included offense of murder. Review of the record reveals that Petitioner did not exhaust this claim. Although Petitioner raised several bases for ineffective assistance of trial counsel in his direct appeal, he did not assert this specific argument in state court. In his Rule 26(B) Application, Petitioner argued that his appellate counsel provided ineffective assistance when she failed to raise this ineffective assistance of trial counsel claim on direct appeal. It is well established, however, that presenting a claim in the context of ineffective assistance of counsel is not sufficient to "fairly present" the claim itself to the state courts. *See, e.g., Wagner v. Smith,* 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original). Accordingly, Petitioner has

10

failed to exhaust the claim that his trial counsel was ineffective in failing to request an instruction on aggravated assault.

Further, there is no longer any procedure by which Petitioner could raise this claim in state court. Because Petitioner was represented by attorneys from the same private firm at trial and on direct appeal, the proper mechanism for him to assert this claim would be a petition for post-conviction relief under § 2953.21.[2] In this case, however, Petitioner cannot return to state court and assert this claim of ineffective assistance of trial counsel in a petition pursuant to § 2953.21. He has already filed a § 2953.21 petition, and Ohio law prohibits a second or successive petition unless the defendant can satisfy one of two conditions. One condition requires the defendant to show that he was "unavoidably prevented from discovery of the facts" upon which his claim for relief was based, or that his claim is based on a newly-recognized federal or state right that applies retroactively. *See* Ohio Rev. Code § 2953.23(A)(1)(a). Given that Petitioner's proposed claim – that his trial counsel ineffectively failed to request a

---

[2] Generally, a claim of ineffective assistance of trial counsel that is based on the record of proceedings – like the one asserted here by Petitioner – must be raised on direct appeal, and *res judicata* precludes a defendant from asserting it in any proceeding after his direct appeal. *See State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175, ¶ 7 of the syllabus. However, Ohio courts have recognized that *res judicata* does not apply where a defendant raises a claim of ineffective assistance of trial counsel for the first time in a post-conviction motion and the defendant was represented by the same counsel, or counsel from the same private firm, at trial and on appeal. *See State v. Lentz*, 639 N.E.2d 784, 785-86, 70 Ohio St.3d 527, 530 (Ohio 1994). This is because, under Ohio law, appellate counsel is not expected to assign his own ineffectiveness as an error on direct appeal. *See Lentz*, 639 N.E.2d at 785, 70 Ohio St.3d at 530. Thus, in cases like this one, where the state appellate court would decline to review claims ineffective assistance of trial counsel on direct appeal, the appropriate mechanism for asserting such claims is a petition for post-conviction relief pursuant to Ohio Revised Code § 2953.21. *Lentz*, 639 N.E.2d at 786, 70 Ohio St.3d at 530.

jury instruction on aggravated assault – arises out of the record of the trial proceedings, he cannot now claim that he only recently discovered the facts on which this claim is based. Nor does he allege – and, given the well-established nature of the right to counsel, he cannot show – that his ineffective assistance claim is based on a newly-recognized federal or state right. Accordingly, this first condition will not permit Petitioner to raise this claim of ineffective assistance of trial counsel in a state court post-conviction proceeding. The second condition for permitting a second or successive § 2953.21 petition applies where a defendant's claim is based on results of DNA testing, *see* Ohio Rev. Code § 2953.23(A)(2), and clearly is not applicable in this case.[3] Given that neither condition would apply to allow Petitioner to file a second or successive § 2953.21 petition, it would be futile for him to return to state court to pursue the claim set forth in Ground Two. Accordingly, this claims is procedurally defaulted. *See, e.g., Rolling v. Muiligan*, No. 1:12-CV-1007, 2012 WL 3961214 at **9-10 (N.D. Ohio Sept. 10, 2012) (Gaughan, J.) (finding procedural default where the petitioner's state court motion for post-conviction relief would be untimely and neither exception would apply to excuse the untimeliness).

Petitioner asserts that his appellate counsel provided ineffective assistance when she represented him on direct appeal despite the fact that her representation would preclude review of ineffective assistance of trial counsel claims, and that her ineffective assistance constitutes cause for his procedural default of his second ground for relief.

---

[3] Specifically, § 2953.23(A)(2) provides an exception for the timeliness requirement of § 2953.21 where the defendant obtained post-conviction DNA testing pursuant to Ohio Revised Code §§ 2953.71 to 2953.82, and the results of that testing "establish, by clear and convincing evidence, actual innocence" of the offense of conviction.

12

This argument lacks merit. A petitioner may satisfy the "cause" prong of the "cause-and-prejudice" test by showing ineffective assistance of counsel.[4] *Murray v. Carrier, 477 U.S. 478, 488 (1986)*. "Attorney error does not constitute cause, however, unless it constitutes ineffective assistance under the test enunciated in" *Strickland*. *Rust v. Zent, 17 F.3d 155, 161 (6th Cir. 1994)*. Under *Strickland*, to demonstrate ineffective assistance, a petitioner must demonstrate both that his counsel's performance was "outside the wide range of professionally competent assistance," and that the allegedly ineffective assistance caused him prejudice. *466 U.S. at 690, 693*. Here, for the reasons discussed in Section V, *supra*, even if Petitioner's appellate counsel's continued representation of him was deficient because her representation precluded appellate review of ineffective assistance of trial claims, Petitioner cannot demonstrate that he was prejudiced as a result of her failure to challenge the jury instruction (the claim asserted in his second ground for relief). Accordingly, Petitioner has procedurally defaulted his second ground for relief, and it should be dismissed.

### V. The Merits of Petitioner's Remaining Claim

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

---

[4] It is well established that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier, 477 U.S. at 488-89*. In this case, Petitioner argued in his Rule 26(B) Application that his appellate counsel was ineffective in representing him on appeal due to her resulting inability to raise various claims of ineffective assistance of trial counsel, including the ineffective assistance of trial counsel claim that Petitioner asserts in his second ground for relief. (Doc. No. 5-1 at Ex. 29.)

13

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. See *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and

14

unreasonably applies it to the facts of the case at hand. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Id. at 520-21 (internal citations and quotation marks omitted). This Court applies this deferential standard of review to the state courts' rulings on Petitioner's remaining claim.

**B.    Ineffective Assistance of Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland*, which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687. This standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

15

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted). Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court. *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000). Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1403 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

In his third ground for relief, Petitioner asserts that his appellate counsel provided ineffective assistance when she represented him on direct appeal despite the fact that her representation would result in the state trial court declining to review claims of ineffective assistance of trial counsel. Specifically, Petitioner contends that his appellate counsel's deficient performance precluded him from asserting the claim that his trial counsel was ineffective in failing to request an instruction on the lesser included

16

offense of aggravated assault. This ground for habeas relief lacks merit because Petitioner cannot show that the omission of this argument on direct appeal resulted in the required prejudice.

In its decision denying Petitioner's Rule 26(B) Application, the state appellate court concluded that, had Petitioner's appellate counsel raised a claim of ineffective assistance based on trial counsel's decision to forego an instruction on aggravated assault, that claim would have failed because trial counsel's decision was a strategic one. (Doc. No. 5-1 at Ex. 31 at 3-4.) Like federal law, Ohio law regarding ineffective assistance claims requires reviewing courts to be highly deferential of trial counsel's strategic decisions. See Strickland, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."); State v. Carter, 651 N.E.2d 965, 977, 72 Ohio St.3d 545, 558 (Ohio 1995) ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."); State v. Smith, 731 N.E.2d 645, 652, 89 Ohio St.3d 323, 328 (Ohio 2000) ("Yet, even if we viewed counsel's trial strategy as questionable, such a strategy should not compel us to find ineffective assistance of counsel. In these situations, we normally defer to counsel's judgment.").

The record reveals that defense counsel's trial strategy was to completely deny that Petitioner had any role in assaulting the victim, Kernich. During his direct testimony and on cross-examination, Petitioner repeatedly denied kicking, punching or stomping

17

Kernich.  (Tr. Vol. VIII at 174-83, 187, 210.)  He offered ten witnesses who testified that he was not a violent person and that he attended church and was otherwise polite and respectful.  (Tr. Vol. VII at 182-205, Vol. VIII at 13-117.)  During counsel's closing argument, he emphasized the inconsistencies in and between the testimony of the State's witnesses who testified that they saw Petitioner stomping, kicking and hitting Kernich once Kernich was on the ground.  (Tr. Vol. IX at 155-59.)  Counsel also pointed to the testimony of Petitioner's character witnesses that Petitioner was not someone who was capable of violence. (*Id*. at 153.)

In sum, Petitioner's trial counsel chose an "all or nothing" defense strategy, urging the jury to determine that Petitioner was not at all involved in assaulting Kernich.  Thus, as the state appellate court acknowledged, it would have been inconsistent for defense counsel to request instructions on lesser included offenses that involved Petitioner engaging in a physical altercation with Kernich, such as aggravated assault.  The mere fact that a trial strategy was unsuccessful is not sufficient to support a conclusion that trial counsel's performance was deficient.  See *State v. Conway*, 848 N.E.2d 810, 832, 109 Ohio St.3d 412, 432-33 (Ohio 2006) ("That this strategy was unsuccessful and the jury ultimately found Conway guilty . . . is not a basis for finding ineffective assistance of counsel.  Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight.").

Given well-established law regarding ineffective assistance of counsel claims that challenge a trial counsel's strategic decisions, had appellate counsel raised an argument regarding trial counsel's failure to request an instruction on aggravated assault, that argument would not have succeeded.  Accordingly, even if appellate

18

counsel's decision to represent Petitioner despite the fact that her representation would result in the state court declining to consider ineffective assistance of counsel claims constituted deficient performance, Petitioner cannot show that he was prejudiced by the omission of his proposed claim for ineffective assistance of trial counsel.

## VI. Conclusion

For the reasons given above, the petition should be dismissed with prejudice.


Date: May 19, 2015                    /s/ *Nancy A. Vecchiarelli*
                                      United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.